UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:20-CV-00133-FDW

| | |
|---|---|
| EDNA GIGON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[1] | ) ) ) ) |
| Defendant. | ) ) ) |

THIS MATTER is before the Court on Plaintiff Edna Gigon's Motion for Summary Judgment, (Doc. No. 12), filed July 21, 2021, and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's (the "Commissioner") Motion for Summary Judgment, (Doc. No. 14), filed September 10, 2021. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g).[2] In her appeal, Plaintiff alleges the Administrative Law Judge (the "ALJ") committed reversible error in making the residual functional capacity (the "RFC") determination because he failed to account for the vocationally limiting effects of Plaintiff's migraine headaches. After careful review, and for the reasons set forth, the Court finds the ALJ did not commit reversible error. Accordingly, Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

1

DENIED; Defendant's Motion for Summary Judgment, (Doc. No. 14), is GRANTED; and the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

Plaintiff filed a Title II application for DIB on February 29, 2016 with an alleged onset date ("AOD") of May 2, 2015. (Tr. 36). The claim was initially denied on November 15, 2016, and denied again upon reconsideration on March 15, 2017. Id. On March 23, 2017, a hearing was held before an ALJ in Charlotte, North Carolina. Id. The ALJ returned an unfavorable decision to Plaintiff on February 21, 2019. Id. at 47.

Using the five-step decisional process outlined below, the ALJ first determined Plaintiff had not engaged in substantial gainful activity since the AOD and met the insured status requirements of the Social Security Act through December 31, 2020. Id. at 38. At step two, the ALJ found the following severe impairments: history of a traumatic brain injury, post-concussion headaches, and post-concussion syndrome. Id. at 39. At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525 and 404.1526. Id. After careful consideration of the record, the ALJ, at step four, found Plaintiff to have the RFC to perform medium work as defined in 20 CFR § 404.1567(c), except she "must avoid concentrated exposure to noise, vibration, and hazards (dangerous machinery)." Id. The ALJ also determined Plaintiff can occasionally read, but no fine print. Id. A vocational expert testified that a hypothetical individual of the same age, education, and work experience as Plaintiff could not perform their past relevant work as a contract specialist. Id. at 45. Thus, the ALJ found Plaintiff was unable to perform any past relevant work. Id. At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were a significant number of jobs in

the national economy Plaintiff can perform, such as clean-up worker, counter supply worker, and sweeper, cleaner. Id. at 45–46. The ALJ ultimately concluded Plaintiff does not have a disability as defined in the Social Security Act from the AOD through the date of his decision. Id. at 46.

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings were supported by substantial evidence. Id.; Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not reweigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in

3

evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861−62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original).

In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

4

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635] (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

5

The single question on appeal is whether the ALJ's decision adequately accounted for the effects of Plaintiff's migraine headaches in its RFC determination. (Doc. No. 13, p. 3). Plaintiff alleges that her testimony, along with the record, supports much greater limitations, including multiple absences, time off-task or breaks, and avoidance of bright lights. Id. at 2. Specifically, Plaintiff argues the ALJ implied that her "headaches [were] not as severe as alleged because they [were] not verified by objective imaging or examination findings, which is inconsistent with the current medical understanding of migraine headaches." Id. Plaintiff also contends that her condition waxes and wanes, which is inconsistent with the ALJ's finding that her "conservative treatment" had been effective. Id. Defendant, on the other hand, asserts the ALJ accurately considered the evidence of Plaintiff's headaches in formulating an RFC. (Doc. No. 15, p. 1).

When evaluating whether a person is disabled by non-exertional pain, an ALJ must follow a two-step process. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citing 20 C.F.R. § 416.929(b); § 404.1529(b)); 42 U.S.C. § 423(d)(5)(A). Second, if Plaintiff has shown such objective medical evidence, an ALJ must assess "the intensity and persistence of the claimant's pain[ ] and the extent to which it affects her ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1); § 404.1529(c)(1)). This assessment must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

6

Id. (citations omitted); see also 20 C.F.R. § 404.1529(a).

Here, the ALJ properly implemented the appropriate two-step analysis when assessing whether Plaintiff was disabled by non-exertional pain. At the first step, the ALJ determined Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 41). Then, at step two, the ALJ found in evaluating all the available evidence that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Id.

To be clear, the ALJ considered objective imaging and exam findings; however, in contrast to Plaintiff's assertions, this evidence was certainly not the ALJ's chief reason for finding inconsistency in Plaintiff's subjective complaints. Cf. Arakas v. Comm., Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020) (finding the ALJ improperly used a lack of objective medical evidence as "his chief, if not definitive, reason for discounting [the plaintiff's] complaints" of fibromyalgia where he discredited the plaintiff's statements about the severity, persistence, and limiting effects of her fibromyalgia because "the doctors' reports fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were disabled.") (internal quotations omitted). In his RFC determination, the ALJ demonstrated Plaintiff's testimony was not only inconsistent with imaging, but also with her functionality and daily activities. Id. For example, the ALJ explained, "[d]espite reports of difficulty concentrating, the claimant had good concentration and attention at appointments. In addition, her memory was intact, she was pleasant and cooperative, and she was well groomed. Moreover, she was alert and oriented in all spheres consistently." Id. The ALJ further illustrated inconsistencies by explaining, "[a]lthough the claimant testified to only getting temporary relief from her headaches, she reported to her doctor that occipital injections, use of her TENS unit, muscle relaxers, and Botox injections provided

symptom relief." Id. Additionally, the ALJ discussed Plaintiff's capacity to perform daily activities such as walking miles, sitting for hours, standing for a long time, exercising, and traveling. Id. Thus, the ALJ irrefutably analyzed all the evidence in the record, including Plaintiff's own subjective statements, in making his determination.

Because the ALJ used the correct two-step analysis in evaluating whether Plaintiff was disabled by non-exertional pain, relied on all the available evidence, and supported his findings by substantial evidence, this Court must uphold the ALJ's determination. See 42 U.S.C. § 405(g); Westmoreland, 718 F.3d at 322.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is DENIED; Defendant's Motion for Summary Judgment, (Doc. No. 14), is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: March 29, 2022

Frank D. Whitney
United States District Judge